## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| YOLANDA SIBLEY and ELIJAH JONES, as Special Administrators of the Estate of MARK JONES, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>SHERIFF CHRISTOPHER SCHMALING, SGT. CRISTIE LEGREE, SGT. ALBERTO VAZQUEZ, CO MAXAMUS MOLINARO, CO BONILLA-RODRIGUEZ, CO KURSTEN TROOP, CO ALLEX KAMINSKI, LT. JENNIFER LYNN FLAIRTY, CO BRANDON SIMONSEN, CO ANDRE BARRY, CPT. MICHAEL MEYER, CPT. TINA LOUISE GONZALEZ, CO LISA SPEER, CO TARIQ MCKINNEY, and RACINE COUNTY,<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COME the Plaintiffs, Yolanda Sibley and Elijah Jones, as Special Administrators of the Estate of Mark Jones, deceased, by and through their attorneys, and for their Complaint against SHERIFF CHRISTOPHER SCHMALING, SGT. CRISTIE LEGREE, SGT. ALBERTO VAZQUEZ, CO MAXAMUS MOLINARO, CO BONILLA-RODRIGUEZ, CO KURSTEN TROOP, CO ALLEX KAMINSKI, LT. JENNIFER LYNN FLAIRTY, CO BRANDON SIMONSEN, CO ANDRE BARRY, CPT. MICHAEL MEYER, CPT. TINA LOUISE GONZALEZ, CO LISA SPEER, CO TARIQ MCKINNEY, and RACINE COUNTY, allege as follows:

### JURISDICTION

1. The jurisdiction of the Court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. § 1331, § 1343, and § 1391(b); the Constitution of

1

the United States; and this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. § 1367.

2. Defendants are residents of the State of Wisconsin. The acts complained of in this Complaint occurred in Racine, Wisconsin. Accordingly, venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §1391.

## PARTIES

3. Decedent, Mark Jones, was at all material times a resident of the State of Wisconsin, of full age and was an inmate at Racine County Jail serving a sentence. As is described in greater detail below, on January 7, 2023, Mark Jones died of a cocaine overdose while in the custody of the Racine County Jail due to the Defendants' failure to ensure he was provided adequate oversight, supervision, emergency medical care, and treatment that should have identified and treated the overdose before he died.

4. Plaintiffs, Yolanda Sibley and Elijah Jones, have been appointed Special Administrators of the Estate of Mark Jones, and were issued letters of office on November 21, 2025, in the Racine County, Wisconsin Circuit Court and therefore have standing to bring all Counts and Causes of Action stated herein.

5. Racine County Sheriff's Department correctional officers and supervisory officers Sgt. Cristie Legree, Sgt. Alberto Vazquez, CO Maxamus Molinaro, CO Bonilla-Rodriguez, CO Kursten Troop, CO Allex Kaminski, Lt. Jennifer Lynn Flairty, CO Brandon Simonsen, CO Andre Barry, Cpt. Michael Meyer, Cpt. Tina Louise Gonzalez, CO Lisa Speer, and CO Tariq McKinney (hereinafter referred to collectively as "Defendant Officers") were at all times relevant residents of the State of Wisconsin and employed by and acting on behalf of the Sheriff Christopher Schmaling and Racine County. The Defendant Officers are sued both individually and in their

official capacities.

6. The Racine County Sheriff's Department is a part of Racine County government and is directed and administered by Sheriff Christopher Schmaling. Sheriff Christopher Schmaling and Racine County are also responsible for medical services and/or the contracts for medical services provided to the pretrial detainees and inmates at Racine County Jail.

7. Sheriff Christopher Schmaling and Racine County operate the Racine County Jail and are the employers and principals of the Defendant Officers, as well as the other officers and/or employees referred to in this Complaint. Sheriff Christopher Schmaling and/or Racine County were given custody and charge of Mark Jones and were responsible for Mark Jones's protection as well as for the hiring, training, and supervision of all personnel necessary to operate and maintain the Racine County Jail.

8. Sheriff Christopher Schmaling was at all times relevant herein the Sheriff of Racine County. As the duly elected Sheriff of Racine County, Christopher Schmaling operates in his official capacity at the Racine County Jail where he was given custody and charge of Mark Jones and was responsible for Mark Jones's protection as well as for the hiring, training, and supervision of all deputies and all personnel necessary to operate and maintain the Racine County Jail. He is sued in his official capacity.

9. At all times material to this Complaint, the Defendant Officers, Sheriff Christopher Schmaling, and Racine County were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the Racine County Sheriff's Department and the State of Wisconsin.

10. Racine County owns, controls, and operates the Racine County Jail.

## STATEMENT OF FACTS

11. By way of background, before January 7, 2023, on information and belief, there

were other prior overdose incidences of which all Racine County Jail correctional officers knew or should have been aware. This included but was not limited to the May 29, 2021, overdose death of Ronquale Dittelo-Scott (subject of a lawsuit currently pending in this District, docket no. 24-cv-00665).

12. On January 7, 2023, Mark Jones was housed in the Walworth Wing of the Racine County Jail. On that day, he was subjected to a search of his cell and his person due to correctional officers being suspicious that he or his cellmate might have obtained contraband from one of Mark Jones's cellmate's family members who had met with the cellmate for a visit that day. Captain Meyer and CO Kaminski conducted this search.

13. After the search of his cell, Mark Jones started engaging in bizarre behavior that was uncharacteristic for him in the dayroom adjacent to his cell, which is a common area where inmates were allowed to socialize when not in lockdown in their cells. Mark Jones's behavior included pacing, jittering hands, walking in circles, hitting his chest, dilated and unfocused eyes, and otherwise acting with manic, abnormal behavior.

14. Sgt. Cristie Legree was present in the dayroom and witnessed this behavior. Instead of initiating medical assistance or calling for medical assistance, which was the appropriate response given that Mark Jones's behavior was clearly the result of a drug overdose, Sgt. Cristie Legree laughed at Mark Jones's behavior.

15. Mark Jones allegedly failed to obey officer commands. Lt. Flairty, CO Barry, CO Simonsen, CO Bonilla-Rodriguez, CO McKinney, and CO Kaminski placed Mark Jones on his stomach, and handcuffed his hands behind his back and placed him in leg restraints. While on his stomach, Mark Jones yelled, "I can't breathe, I can't breathe!"

16. CO Barry stayed behind while Defendants Lt. Flairty, CO Kaminksi, CO Simonsen,

CO Speer, and CO Bonilla-Rodriguez helped walk Mark Jones out of the Walworth Wing and escorted him toward the Jail's Kenosha Unit. However, once outside the Kenosha Unit, Mark Jones's behavior again became strange and he stopped walking.

17. At this time, Captain Meyer appeared outside Kenosha Unit to assist.

18. Sgt. Vazquez also appeared on the scene with a WRAP device, which is used to restrain inmates so that they cannot strike with their arms or legs. Sgt. Vazquez witnessed Mark Jones's behavior but ordered Mark Jones to be secured in the WRAP system. CO Molinaro, CO McKinney, CO Speer, and CO Troop assisted in securing Mark Jones in the WRAP.

19. Despite his behavior being consistent with a drug overdose, the aforementioned correctional officers and supervisors again failed to initiate or call for medical assistance. Instead, the correctional officers and supervisors placed Mark Jones in a WRAP device, which secured his arms and legs. While being placed in the WRAP, Mark Jones became unresponsive. Instead of calling for medical assistance or engaging in CPR or other lifesaving efforts, the correctional officers continued to place Mark Jones in the WRAP.

20. The correctional officers then attempted to lift Mark Jones into a standing position but realized he was dead weight. Instead of calling for medical assistance or beginning lifesaving efforts, a WRAP cart was requested into which Mark Jones was to be placed and then transported to the Kenosha Unit of the Jail.

21. The aforementioned correctional officers and supervisors tried to rouse Mark Jones by physically and verbally trying to wake him, without success. They still failed to call for medical assistance or begin CPR or other medical assistance even though it was unclear whether Mark Jones was even breathing at this point

22. After several minutes, the aforementioned correctional officers and supervisors

officers called for an ambulance. However, they failed to initiate CPR or any other lifesaving efforts despite the fact that Mark Jones was completely unresponsive and appeared to not be breathing. Instead, the officers lifted Mark Jones's limp, unresponsive body into a cart and wheeled him toward the C-Link section of the Jail.

23. Cpt. Meyer administered Narcan at one point after Mark Jones became unresponsive, but, on information and belief, took no further actions to perform CPR or other lifesaving efforts at this time. Cpt. Tina Gonzalez also administered another dose of Narcan but, on information and belief, took no further actions to perform CPR or other lifesaving efforts at this time.

24. The correctional officers and supervisors did not start lifesaving efforts for an extensive period of time despite the fact that Mark Jones was unresponsive for several minutes, had previously complained of breathing issues, and had engaged in behavior all of the Defendant Officers knew was consistent with drug use and a drug overdose. It was only after that time period that the officers partially removed Mark Jones from the WRAP, activated an AED machine, and started CPS to try to revive him. This was far too little, far too late.

25. Meanwhile, the ambulance that had been called to the Jail was not allowed to move through the gate of the Jail for several minutes, further delaying medical care. This sealed Mark Jones's fate, because the Jail had no medical staff on duty at the time who could save Mark Jones's life.

26. Once the paramedics were finally given access to Mark Jones they unsuccessfully attempted to revive him. Mark Jones died of a cocaine overdose at the Jail.

27. On information and belief, Sheriff Christopher Schmaling and Racine County knew that the Defendant Officers had not been given adequate training in the assessment and

identification of overdoses, and knew or should have known of a pattern and practice through their direct and/or indirect actions acquiesced and/or promoted such conduct when they knew or reasonably should have known was continuous and escalating.

28. As a direct and proximate result of one or more of the previously mentioned acts or omissions of the Defendants, Mark Jones was caused to suffer conscious pain and suffering up until his death and additional damages, including wrongful death damages for the loss suffered by his heirs and next of kin.

29. On or about January 7, 2023, and at all times relevant, the Defendant Officers were on duty and were duly appointed officers for the Racine County Sheriff's Office. The Defendant Officers engaged in the conduct complained of on said date in the course and scope of employment and while on duty. This action is being brought in both the official and individual capacity of the Defendant Officers.

## COUNT I
### Cruel and Unusual Punishment Claim Pursuant to 42 U.S.C. § 1983
### Under the Eighth Amendment Against the Defendant Officers

30. This Count incorporates by reference herein all of the foregoing allegations.

31. The Defendant Officers intentionally failed to properly assess Mark Jones's level of intoxication, medical status, and wellbeing, and further, failed to provide or secure the emergency medical care that Mark Jones required to prevent him from dying from an overdose.

32. The above-described actions and inactions were objectively unreasonable because Mark Jones presented with a patently dangerous level of intoxication based on the objective symptoms he exhibited, including but not limited to his manic, uncharacteristic behavior, and dilated pupils, which made it obvious that he was suffering from a drug overdose.

33. The conduct of the Defendant Officers constituted a deprivation of Mark Jones's

constitutionally protected rights, specifically, his Eighth Amendment rights afforded by the United States Constitution, while acting under the color of the law. The Defendant Officers' conduct was sufficiently serious as an objective matter because their conduct denied Mark Jones the minimal civilized measure of life's necessities and thereby created an excessive risk to Mark Jones's health and safety. The Defendant Officers further acted with deliberate indifference because they knew of and disregarded this excessive risk of harm to Mark Jones.

34. The aforementioned actions of the Defendant Officers were the direct and proximate cause in fact of the constitutional violations set forth herein.

35. The above stated actions violated Mark Jones's established statutorily and constitutionally protected rights which a reasonable person would have known.

36. As a direct and proximate result of the Defendant Officers' actions, Mark Jones suffered substantial pain, suffering and loss of his life.

37. At all times relevant, the Defendant Officers were acting under color of law.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and against Defendants Sgt. Cristie Legree, Sgt. Alberto Vazquez, CO Maxamus Molinaro, CO Bonilla-Rodriguez, CO Kursten Troop, CO Allex Kaminski, Lt. Jennifer Lynn Flairty, CO Brandon Simonsen, CO Andre Barry, Cpt. Michael Meyer, Cpt. Tina Louise Gonzalez, CO Lisa Speer, and CO Tariq McKinney. Plaintiffs demand judgment jointly and severally and further demand an award of compensatory damages, punitive damages, prejudgment interest, and costs and attorney's fees against the foregoing Defendants and any additional relief this Court deems equitable and just.

## COUNT II
### Indemnification Claim Against Defendants
### SHERIFF CHRISTOPHER SCHMALING and RACINE COUNTY

38. This Count incorporates by reference herein all of the foregoing allegations.

39. In the event that any individual defendant is found liable for their actions performed in the course of their employment and/or agency with the Racine County Sheriff's Department, Sheriff Christopher Schmaling and/or Racine County must indemnify such employee for this verdict pursuant to Wis. Stat. §895.46.

WHEREFORE, Plaintiffs demand that Sheriff Christopher Schmaling and/or Racine County pay any compensatory judgment against individual defendants who acted in the course of their employment and/or agency.

### COUNT III
### *Monell* Pattern or Practice Claim Against Defendants
### SHERIFF CHRISTOPHER SCHMALING and RACINE COUNTY

40. This Count incorporates by reference herein all of the foregoing allegations.

41. This count is brought pursuant to 42 U.S.C. §1983 and the Constitution of the United States.

42. Defendants Sheriff Christopher Schmaling and Racine County had knowledge of a pattern and practice among the Defendant Officers to ignore obvious behaviors and/or symptoms that demonstrated that inmates and pretrial detainees were intoxicated such that they posed a risk of being harmed or dying from a drug overdose.

43. More generally, Defendants Sheriff Christopher Schmaling and Racine County had knowledge of a pattern and practice among the Defendant Officers to fail to properly monitor the safety and health of inmates and pretrial detainees, and fail to call for an ambulance or otherwise perform emergency lifesaving efforts for inmates and pretrial detainees who exhibited a patent, urgent healthcare issue such as a drug overdose.

44. Defendants Sheriff Christopher Schmaling and Racine County perpetuated, tolerated, and fostered the Defendant Officers to engage in the above-descried constitutional

deprivations.

45. Moreover, Defendants Sheriff Christopher Schmaling and Racine County failed to ensure that any medical staff were present at the Racine County Jail on January 7, 2023, despite, on information and belief, knowing that their jail population had ready access to illegal street drugs that could necessitate the need for emergency medical care on site.

46. Defendants Sheriff Christopher Schmaling and Racine County's acceptance of the pattern and practice among the Defendant Officers to engage in the above-descried constitutional deprivations during the detention of inmates and pretrial detainees created a practice, although not written or express municipal policy, was so widespread, permanent, and settled that it constituted a custom or usage within the Racine County Sheriff's Department's Defendant Officers.

47. The aforementioned Defendants' pattern and practice of failing to secure the constitutional rights of incarcerated individuals is further born out in other federal court litigation. See e.g., *James v. Schmaling*, 22-cv-00344 (E. Dist. Wis.) and *Estate of Ronquale Dittelo-Scott v. Schmaling*, 24-cv-00665 (E. Dist. Wis.).

48. The policy, practice, custom and/or procedure of Defendants Sheriff Christopher Schmaling and Racine County caused the violation of Mark Jones's civil rights.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and against Defendants Sheriff Christopher Schmaling and Racine County. Plaintiffs demand judgment jointly and severally and further demand an award of compensatory damages, prejudgment interest, costs and attorney's fees against the foregoing Defendants and any additional relief this Court deems equitable and just. Plaintiffs further respectfully request that the Court enter an injunction that compels Defendants Sheriff Christopher Schmaling and Racine County to institute an intensive

training program that trains individual correctional officers on the recognition of symptoms of a drug overdose, and further, that requires that the Racine County Jail be staffed by a medical professional at all times.

## JURY DEMAND

Plaintiffs demands trial by jury.

Respectfully Submitted,

/s/ Jeffrey D. Naffziger
One of the Attorneys for Plaintiff

Kevin W. O'Connor (WIED Bar No. 6216627)
Jeffrey D. Naffziger (WIED Bar No. 6275581)
O'Connor Law Firm, Ltd.
100 S. Wacker Drive, Suite 350
Chicago, Illinois 60606
(312) 906-7609
jnaffziger@koconnorlaw.com
firm@koconnorlaw.com